**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

JAY RINGGOLD,                                  :
                                               :
            Plaintiff,                         :
                                               :    C.A. No.  06-17 GMS
v.                                             :    TRIAL BY JURY DEMANDED
                                               :
OFFICER THOMAS CURLEY and                      :
OFFICER NELIDA VEGA,                           :
                                               :
            Defendants.                        :

**DEFENDANTS' OPENING BRIEF IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

Rosamaria Tassone (I.D. #3546)
City of Wilmington Law Department
Louis L. Redding City/County Building
800 French Street, 9th Floor
Wilmington, Delaware 19801-3537
(302) 576-2175

Dated:  October 15, 2007

**TABLE OF CONTENTS**

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

     I.    PLAINTIFF HAS FAILED TO ESTABLISH A VIOLATION OF THE FOURTH
           AMENDMENT.  AS SUCH, PLAINTIFF CANNOT MAINTAIN A CAUSE OF
           ACTION UNDER 42 U.S.C. §1983, AND DEFENDANTS ARE ENTITLED TO
           JUDGMENT AS A MATTER OF LAW  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

           A.    THE RECORD DOES NOT DEMONSTRATE THAT PLAINTIFF
                  WAS "SEIZED" FOR PURPOSES OF THE FOURTH
                  AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

           B.    EVEN  ASSUMING  FOR  PURPOSES  OF  SUMMARY
                  JUDGMENT  THAT  DEFENDANTS  STRUCK  PLAINTIFF'S
                  VEHICLE DURING THE POLICE PURSUIT IN AN ATTEMPT TO
                  STOP HIS FLIGHT, THE AMOUNT OF FORCE USED BY THE
                  DEFENDANTS  WAS  REASONABLE  IN  LIGHT  OF  THE
                  TOTALITY  OF  THE  CIRCUMSTANCES.    AS  SUCH,
                  DEFENDANTS ARE ENTITLED TO QUALIFIED
                  IMMUNITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                  1.    DEFENDANTS' ALLEGED USE OF FORCE WAS
                        OBJECTIVELY REASONABLE. . . . . . . . . . . . . . . . . . . 15

                  2.    PLAINTIFF CANNOT MAINTAIN A §1983 ACTION
                        AGAINST DEFENDANT VEGA BECAUSE THE RECORD
                        EVIDENCE DEMONSTRATES THAT SHE WAS  NOT
                        DRIVING THE VEHICLE THAT PLAINTIFF ALLEGES
                        RAMMED HIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## <u>TABLE OF CITATIONS</u>

<u>Acierno v. Cloutier</u>, 40 F.3d 597 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Anderson v. Creighton</u>, 483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Arnold Pontiac-GMC, Inc. v. General Motors Corp.</u>,
     786 F.2d 564 (3d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Baker v. McCollan</u>, 443 U.S. 137 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Beckwith v. Sherwood</u>,
     2001 U.S. Dist. LEXIS 24079 (E.D. Pa. October 11, 2001) . . . . . . . . . . . . . . . 15, 16, 18

<u>Bell v. Wolfish</u>, 441 U.S. 520 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>Bensinger v. Mullen</u>,
     2000 U.S. Dist. LEXIS 11012 (E.D. Pa. August 4, 2000) . . . . . . . . . . . . . . . . . . . . . . . . 18

<u>Big Apple BMW, Inc., et al. v. BMW of North America, Inc., et al.</u>,
     974 F.2d 1358 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Brower v. County of Inyo</u>, 489 U.S. 593 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>California v. Hodari D.</u>, 499 U.S.621 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Carrigan v. State</u>, 957 F. Supp. 1376 (D. Del. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Carrol v. Borough of State College</u>, 854 F.Supp. 1184 (M. D. Pa. 1994) . . . . . . . . . . . . . . . . . . 13

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

<u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>City of Philadelphia Litig.</u>, 49 F.3d 945(3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>Clark v. Condon</u>, 2002 U.S. Dist. LEXIS 17831(September 20, 2002) . . . . . . . . . . . . . . . . . . . 17

<u>Elmore v. Cleary</u>, 399 F.3d 279 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

<u>Evancho v. Fisher</u>, 423 F.3d 347(3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fraser v. Pennsylvania State System of Higher Education, et al.,
    1994 U.S. Dist. LEXIS 7409 (E.D. Pa. June 6, 1994) . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Goodman v. Mead Johnson & Co., 534 F.2d 566 (3d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . 11

Graham v. Connor, 490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Harlow v. Fitzgerald, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Hunter v. Bryant, 502 U.S. 224 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ingraham v. Wright, 430 U.S. 651 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Johnson v. Glick, 481 F.2d 1028 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Lamb-Bowman v. Delaware State Univ.,
    152 F.Supp.2d 553 (D. Del. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Matsushita Electric Industries Co., Ltd. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Metcalf v. Long, 615 F. Supp. 1108 (D. Del. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Mitchell v. Forsyth, 472 U.S. 511 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Nardini v. Hackett,
    2001 U.S. Dist. LEXIS 15896 (E.D. Pa. September 19, 2001) . . . . . . . . . . . . . . . . . . . . 18

Nelson v. Walsh, 60 F. Supp. 2d 308 (D.Del. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rode v. Dellarciprete, 845 F.2d 1195 (3d cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Rogers v. Powell, 120 F.3d 446 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Sanders v. Workman,
    2001 U.S. Dist. LEXIS 9053 (D. Del. March 26, 2001) . . . . . . . . . . . . . . . . . . . . . . . . 19

Saucier v. Katz, 533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19, 20

Scott v. United States, 436 U.S. 128 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125(3d Cir. 1995) . . . . . . . . . . . . . . . . . 9

<u>Siegert v. Gilley,</u> 500 U.S. 226 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Smith v. City of Wilmington,</u> 2007 U.S. Dist. LEXIS 20314 (D.Del. March 22, 2007) . . . . . . . 10

<u>Smith v. Marasco,</u> 318 F.3d 497 (3d Cir. 2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>Tennessee v. Garner,</u> 471 U.S. 1 (1985)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>Terry v. Ohio,</u> 392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>United States v. Robinson,</u> 414 U.S. 218 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Wayne v. Borough of West Chester,</u> 891 F.2d 458 (3d Cir. 1989)  . . . . . . . . . . . . . . . . . . . . . . . 10

<u>West v. Atkins,</u> 487 U.S. 42(1988)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**Statutes**

28 U.S.C. §1915 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1950(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 <u>U.S.C.</u> §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Rules**

Fed. R. Civ. P. 56(e)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## NATURE AND STAGE OF THE PROCEEDINGS

On January 9, 2006, Plaintiff Jay Ringgold filed a pro se complaint in the United States District Court for the District of Delaware, naming as defendants the Wilmington Police Department, Officer Thomas Curley and Officer Nelida Vega. Plaintiff used a form provided to incarcerated individuals for filing a complaint under the Civil Rights Act, 42 U.S.C. §1983. In his Complaint, Plaintiff alleges that during a police pursuit, of which he was the subject, his vehicle was "rammed" by a vehicle operated by Defendant Officers Thomas Curley and Nelida Vega. The incident occurred on March 10, 2004. Plaintiff further alleges that on March 11, 2004, while being transported to the Howard R. Young Correctional Institution in a Wilmington Police Department vehicle, the driver of the vehicle rear-ended another vehicle. Plaintiff alleges that the Defendant responsible for the latter incident is the Wilmington Police Department. (D.I. 2).

On May 16, 2006, the Court, screening Plaintiff's Complaint pursuant to 28 U.S.C. §§ 1915 and 1950(A), dismissed the §1983 claim against the Wilmington Police Department for failure to state a claim upon which relief could be granted. The Court found that even construing the Complaint liberally, Plaintiff had not alleged a constitutional violation by the Wilmington Police Department during the March 11 incident. At most, Plaintiff had alleged mere negligence which is insufficient to impose liability under §1983. Additionally, the Court dismissed Plaintiff's supplemental State claim against the Wilmington Police Department, holding that municipal immunity bars Plaintiff's claim. (D.I. 7). As such, the only claims remaining are those against Defendants Curley and Vega stemming from Plaintiff's allegation that the Officers "rammed" his vehicle during a pursuit.

On September 11, 2006 and December 11, 2006, Defendants Curley and Vega, respectively,

1

filed Answers to the Complaint.  (D.I. 11, 13).

Discovery in this matter closed September 21, 2007.  The following is Defendants Curley and Vega's Motion for Summary Judgment.

## SUMMARY OF ARGUMENT

Plaintiff cannot establish a violation of the Fourth Amendment because the record does not demonstrate that Plaintiff was "seized" by Defendants.    As such, Plaintiff cannot claim the protections afforded to individuals under the Fourth Amendment.    Given that Plaintiff cannot establish a constitutional violation, he cannot maintain a cause of action under 42 U.S.C. §1983, and Defendants are entitled to judgment as a matter of law.

However, even if the Court assumes for purposes of summary judgment that Defendants struck Plaintiff's vehicle during the police pursuit in an attempt to stop his flight, the amount of force used by the Defendants was reasonable in light of the totality of the circumstances.    As such, Defendants are entitled to qualified immunity.    Further, Plaintiff cannot maintain a §1983 action against Defendant Vega because the record evidence demonstrates that she was  not driving the vehicle that Plaintiff alleges rammed him.

## STATEMENT OF FACTS

On March 10, 2004, Officers Tarik Moody and Chad Dougherty were advised by "Wilcom" (Wilmington Police Department Communications) that Plaintiff Jay Ringgold, a probation absconder wanted for various weapons offenses, was at the residence located at 825 Morrow Street in the City of Wilmington. The officers were further advised to use caution when apprehending Plaintiff because he was believed to be armed with a firearm. Based upon this information, Officers Moody and Dougherty responded to 825 Morrow Street in order to serve the warrant and arrest Plaintiff. (A 4, 32 (Plaintiff's Answer to Defendants' Interrogatory #20 "Being as though I was on the run from a probation violation...")). During this time, Officers Moody and Dougherty were on duty, dressed in uniform and operating a marked police vehicle. (A 4). Officers Gordon, Evans, Johnson and Lucas, driving two (2) marked police vehicles, also responded to the location to assist Officers Moody and Dougherty. (A 4, 8, 10).

When Officers Moody and Dougherty turned into the 800 block of Morrow Street, they observed a male matching Plaintiff's description sitting in the driver's seat of a 1995 Pontiac Grand Am. The vehicle was parked on the west side of the street. Correctly identifying the driver as the fugitive they were seeking, the officers positioned their marked police vehicle in front of the Grand Am to prevent Plaintiff from driving forward. The officers then exited their vehicle and approached Plaintiff. (A 4). At that point, Plaintiff, recognizing Moody and Dougherty as police officers, shifted his vehicle into reverse and drove in reverse northbound on Morrow Street in an attempt to flee the officers. (A 4, 32 (Plaintiff's Answer to Defendants' Interrogatory #20 "As I was leaving a friends (sic) residence, a police cruiser blocked my path. Being as though I was on the run from a probabtion violation, I avoided the officers by taking them on a brief chase from the 800 block of

Morrow Street through Wilmington's North side.")).   Dougherty gave chase on foot while Moody re-entered the police vehicle and began to pursue Plaintiff.  (A 4).  Officers Johnson and Lucas, who had positioned themselves in the 800 block of Monroe Street to apprehend Plaintiff in the event that he fled on foot from the rear of the residence, joined the pursuit.  (A 8).  Officers Gordon, Evans, and Buhrman subsequently joined in the pursuit.  (A10-11).

Plaintiff drove north on Morrow Street, east on 9th Street, north on West Street and continued to 12th Street.  At West and 12th Streets, a major intersection, Plaintiff disregarded a red light while turning west onto 12th Street.   Plaintiff then turned north onto Washington Street, disregarding a second red light.   At the intersection of Baynard Boulevard and Washington Street, Plaintiff drove his vehicle northbound in the southbound lane into oncoming traffic.   While driving north on Washington Street, Plaintiff disregarded a third red light at the intersection of Washington Street and Concord Avenue, continuing on Washington Street until he turned left onto 32nd Street.    Plaintiff then turned south on Madison Street.  At the intersection of 30th and Madison Streets, Plaintiff discarded a hand gun from the driver's side window.[1]  Observing Plaintiff discard the gun, Officer Moody immediately transmitted this information over the radio to other pursuing units.  (A 5).

At this point, Plaintiff turned east on 29th Street.  In the area of 29th and West Streets, Plaintiff sped passed Officers Draper and Lenhardt, who were responding to assist the officers in the pursuit, and nearly struck their marked police vehicle in his attempt to flee.  (A 7).  Plaintiff disregarded a fourth red light at the intersection of 29th and Washington Streets, where he then turned north onto

---

[1] The handgun was subsequently recovered in the 3100 block of Madison Street by Officers Johnson and Lucas who broke from the pursuit to search for the handgun.  The handgun was a chrome Walther .380 caliber PPK with a black grip.   The handgun had six live rounds in the magazine.  (A 8).

Washington Street. Plaintiff continued on Washington Street, turning west onto 30th Street. (A 4-5, 8, 11). During the pursuit, Officer Moody observed Plaintiff "operat[ing] his vehicle aggressively, showing no regard for his safety, pedestrian or civilian vehicular traffic, nor the well-being of officers in pursuit. Ringgold also operated his vehicle in excess of the posted speed limit (25mph) throughout the duration of the pursuit." (A 4).

At this time, Defendant Officers Thomas Curley and Nelida Vega were in the area on routine patrol and heard Officer Moody broadcasting the pursuit over the radio. Both Defendants Curley and Vega were in uniform and driving a marked police vehicle (vehicle #3042). In an attempt to assist in Plaintiff's apprehension, Defendants responded to the area of 30th and Monroe Streets. Defendant Curley was driving the vehicle. In the 2900 block of Monroe Street, Defendants heard a radio transmission indicating that Plaintiff was traveling westbound on 30th Street from Washington Street. Defendant Curley approached the intersection of 30th and Monroe Streets, stopping short of entering the intersection. At that point, Defendants observed a civilian vehicle traveling west on 30th Street in front of Plaintiff's vehicle. The civilian vehicle came to a stop prior to entering the intersection. While illegally passing to the left of the stopped civilian vehicle to evade the pursuing officers, Plaintiff struck the front bumper of Defendants' patrol vehicle. However, Plaintiff did not stop after striking Defendants' vehicle and continued to flee west on 30th Street. At this point, Defendant Curley pulled out directly behind Plaintiff and began to follow him. Defendants observed that Plaintiff's vehicle seemed impaired and began to slow considerably, a fact which Defendants transmitted over the radio. Plaintiff's vehicle finally came to a stop at 30th and Harrison Streets. (A 5, 9, 11).

When the vehicle came to a stop, several officers, including Defendant Curley, converged

on Plaintiff in an attempt to remove him from his vehicle. The officers and Plaintiff engaged in a brief struggle as Plaintiff continued to resist the officers' attempts to take him into custody, disobeying orders issued by officers to "stop resisting" and "put your hands behind your back." Within a short period of time however, Plaintiff was pulled from his vehicle, forced to the ground and ultimately handcuffed by Officer Gordon. (A 5, 9, 10). Officer Gordon, observing that Plaintiff's vehicle was idling at an "extremely high" rate and that the exhaust pipe was "glowing red," attempted to pull Plaintiff away from the vehicle. However, unbeknown to Officer Gordon, Plaintiff's foot was caught on something inside the vehicle. After Plaintiff's foot was freed, Plaintiff was removed from the vicinity of the vehicle. (A 10).

At this time, Plaintiff complained that his ankle was injured. Based upon Plaintiff's complaint, Plaintiff was placed in Officers Gordon and Evan's vehicle and immediately transported to Wilmington Hospital. (A 5, 10). Once at Wilmington Hospital, he received medical treatment for a contusion to his right leg. (A36 - 40).[2] The records also indicate that Plaintiff's right ankle had

---

[2]

 In Plaintiff's Answers to Defendants' Interrogatories, Plaintiff states that his "leg [was] slammed repeatedly into the door which resulted in my leg being bruised." (A 32 (Plaintiff's Answer to Defendants' Interrogatory #10)). Presumably, Plaintiff is referring to his leg being "slammed" while Officer Gordon was attempting to fully remove him from his vehicle. However, the Wilmington Hospital medical records note that Plaintiff stated that "he was being pulled out of police cruiser while his leg was 'stuck in the door,'" and that his leg was "shut in door of a police cruiser." (A 36). Neither Plaintiff's Complaint nor Plaintiff's Answers to Defendants' Interrogatories allege that he was pulled from a police cruiser or that his leg was shut in the door of a police cruiser. (D.I. 23; A 30-35). Notably, in Plaintiff's medical records from St. Francis Hospital where he was transported following the motor vehicle accident which occurred the following day, it states that Plaintiff complained of pain to his leg "where he was trapped while extrication attempted." (A 41). However, this discrepancy is not material to this Motion given the fact that Plaintiff's Complaint does not allege that excessive force was used when removing him from his vehicle or placing him in handcuffs. Plaintiff only alleges that Defendants "rammed" him in the course of the pursuit and that this act constitutes excessive force. (D.I. 2; A 33(Plaintiff's Answer to Defendants' Interrogatory #24)).

been previously injured in an unrelated incident in 2001, and that he took eight (8) Xanax pills the evening before.  (A 36, 38).  Plaintiff was advised to take Ibuprofen and released.  (A 40).

Plaintiff was charged with twenty-two (22) offenses stemming from this incident.  Plaintiff pled guilty to the following charges: possession of a deadly weapon by a person prohibited, tampering with evidence, resisting arrest and aggressive driving.  (A 42).

## STANDARD OF REVIEW

The Court must grant summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), *cert denied*, 484 U.S. 1066 (1988), and Arnold Pontiac-GMC, Inc. v. General Motors Corp., 786 F.2d 564, 568 (3d Cir. 1986). "In considering a motion for summary judgment, a court does not resolve factual disputes or make credibility determinations, and must view the facts in the light most favorable to the non-moving party." Nelson v. Walsh, 60 F. Supp. 2d 308, 311 (D. Del. 1999), citing Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1127 (3d Cir. 1995). The moving party bears the burden of proving that no genuine issue of material fact is in dispute. *See* Matsushita Electric Industries Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 N.10, (1986). However, "[t]he moving party is not required to negate the non-movant's claim, but is only required to point out the lack of evidence supporting the non-movant's claim." Carrigan v. State, 957 F. Supp. 1376, 1381 (D. Del. 1997); *see also* Big Apple BMW, Inc., et al. v. BMW of North America, Inc., et al., 974 F.2d 1358, 1362 (3d Cir. 1992). Simply stated, summary judgment is appropriate "where admissible evidence fails to demonstrate a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Nelson, 60 F. Supp. 2d at 311.

Once the moving party puts forth a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the non-moving party cannot produce "concrete evidence from which a reasonable [trier of fact] could return

a verdict in [his] favor," then summary judgment for the movants must be granted. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986). "The mere existence of some evidence in support of the non-moving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the non-moving party on that issue." <u>Lamb-Bowman v. Delaware State Univ.</u>, 152 F.Supp.2d 553, 557-558 (D. Del. 2001), citing <u>Anderson</u>, 477 U.S. at 249. Further, "[i]f a moving party has demonstrated the absence of a genuine issue of material fact – meaning that no reasonable jury could find in the non-moving party's favor based upon the record as a whole – concerns regarding the credibility of witnesses cannot defeat summary judgment. Instead, the non-moving party must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" <u>Smith v. City of Wilmington</u>, 2007 U.S. Dist. LEXIS 20314, *17 (D.Del. March 22, 2007), citing <u>Anderson</u>, 477 U.S. at 256-257.

A dispute regarding a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Wayne v. Borough of West Chester</u>, 891 F.2d 458, 459 (1989). Indeed, the non-movant must provide "significant probative evidence tending to support the complaint." <u>Anderson</u>, 477 U.S. at 249. The moving party "may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." <u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 896 (3d Cir. 1987); <u>Celotex Corp.</u>, 477 U.S. at 322 (holding that Rule 56 requires summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

In sum, summary judgment serves to "avoid a pointless trial in cases where it is unnecessary

10

and would only cause delay and expense." <u>Fraser v. Pennsylvania State System of Higher Education,</u> <u>et al.,</u> 1994 U.S. Dist. LEXIS 7409, *8 (E.D. Pa. June 6, 1994), citing <u>Goodman v. Mead Johnson</u> <u>& Co.,</u> 534 F.2d 566, 573 (3d Cir. 1976).

## ARGUMENT

I.   **PLAINTIFF HAS FAILED TO ESTABLISH A VIOLATION OF THE FOURTH AMENDMENT. AS SUCH, PLAINTIFF CANNOT MAINTAIN A CAUSE OF ACTION UNDER 42 U.S.C. §1983, AND DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

A.   **The Record Does Not Demonstrate that Plaintiff was "Seized" for Purposes of the Fourth Amendment.**

Plaintiff Jay Ringgold's Complaint is brought pursuant to 42 U.S.C. §1983. In the Court's May 16, 2006 Order, the Court identified a cognizable excessive force claim against Defendants Thomas Curley and Nelida Vega by accepting as true the factual allegation contained in Plaintiff's Complaint, specifically that Defendants rammed their police vehicle into Plaintiff's vehicle during a police pursuit. However, the evidentiary record demonstrates that Defendants did not "ram" Plaintiff during the March 10 pursuit. Rather, Plaintiff struck Defendants' vehicle while passing a stopped civilian vehicle. This fact is substantiated in the record by the police reports written at the time of the incident and by the photographs of both Plaintiff's vehicle and Defendants' vehicle which depict minor scratches and paint transfer. (A 5, 9, 21-29). Given this fact, Plaintiff cannot be said to have been "seized" by Defendants, nor that any force, let alone an unreasonable amount of force, was used to stop Plaintiff's flight. As such, Plaintiff cannot establish a constitutional violation, and Defendants are entitled to judgment as a matter of law.

In order to maintain a cause of action under §1983, Plaintiff must establish a constitutional violation, as §1983 "is not itself a source of substantive rights, but [rather is] a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). In order to establish liability under §1983, Plaintiff must prove that the Defendants, acting under color of law, violated his federal constitutional or statutory rights, thereby causing injury. Elmore

v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005).  With regard to police pursuits, federal courts have held

that police pursuing a fleeing vehicle is not a Fourth Amendment seizure "absent some aggravating

circumstances."  Carrol v. Borough of State College, 854 F. Supp. 1184, 1190 (M. D. Pa. 1994),

citations omitted.  "It is only when the fleeing suspect is forcibly halted that a seizure occurs and

Fourth Amendment protections come into play."  Id., citing California v. Hodari D., 499 U.S.621

(1991) (A show of authority by the police which is ignored by the fleeing suspect does not constitute

a seizure.  "An arrest requires either physical force... or, where that is absent, submission to the

assertion of authority.")  The United States Supreme Court has held:

> It is clear that a Fourth Amendment seizure does not occur whenever there is a
> governmentally caused termination of an individual's freedom of movement... nor
> even whenever there is a governmental and governmentally desired termination of
> an individual's freedom of movement through means intentionally applied.  Brower
> v. County of Inyo, 489 U.S. 593, 595-596 (1989).

In order to carry his burden at trial, Plaintiff must adduce sufficient affirmative evidence from

the record that Defendants rammed his car, thereby effectuating a seizure which permits Plaintiff to

claim the protections of the Fourth Amendment.  However, in the present case, a reasonable jury,

viewing the record as a whole, cannot find that Defendants Curley and Vega rammed Plaintiff's

vehicle, and that Plaintiff was seized for purposes of the Fourth Amendment.  Plaintiff has stated in

response to written interrogatories that he can present no eye-witnesses to corroborate his allegation

the Defendants rammed his vehicle.  (A 30).  However, the police reports submitted at the time of

the incident state that Plaintiff actually struck Defendants' vehicle.  (A 5, 9).  Even more compelling

are the pictures which were taken of the vehicles at the time of the incident.  It is clear from the

pictures that the vehicles sustained minor damage consistent with Plaintiff striking Defendants'

vehicle, specifically scratches to the left front bumper of the police vehicle and scratches to the left

side doors of Plaintiff's vehicle.  (A 21,23,25,27).  None of the pictures evidence damage to Plaintiff's vehicle that would be consistent with a police vehicle ramming Plaintiff's vehicle at a high rate of speed as Plaintiff alleges.  (A 33 "While driving through said intersection of said incident, I saw the defendants (sic) vehicle proceeding towards the side of my vehicle at an accelerated rate until the point of impact, which happened to be the side of my vehicle.")  Rather, the pictures simply show paint transfer.  Given that the record contains no evidence that Defendants rammed Plaintiff's vehicle during a police pursuit, Plaintiff cannot establish a constitutional violation sufficient to maintain a §1983 cause of action, and Defendants are entitled to judgment as a matter of law.

> **B.**     **Even Assuming For Purposes of Summary Judgment that Defendants Struck Plaintiff's Vehicle During the Police Pursuit in an Attempt to Stop His Flight, the Amount of Force Used By the Defendants was Reasonable in Light of the Totality of the Circumstances.  As Such, Defendants are Entitled to Qualified Immunity.**

Even if the Court were to assume as true Plaintiff's allegation that Defendants rammed Plaintiff's vehicle, the forced used by Defendants to stop Plaintiff's flight was reasonable given the totality of the circumstances.  Therefore, Plaintiff cannot establish a violation of the Fourth Amendment, and Defendants are entitled to qualified immunity.  Further, it is undisputed that Defendant Curley was driving the vehicle that Plaintiff alleges rammed him.  Defendant Vega was the passenger and, therefore, did not ram into Plaintiff.  As such, Plaintiff cannot maintain a §1983 cause of action against Defendant Vega.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The privilege is "an immunity from suit

rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Consequently, the United States Supreme Court has repeatedly stressed that immunity questions must be decided at the earliest possible stage of litigation. Hunter v. Bryant, 502 U.S. 224, 227(1991). Whether a governmental official is entitled to qualified immunity is often a legal question and "particularly amenable to resolution on summary judgment." Beckwith v. Sherwood, 2001 U.S. Dist. LEXIS 24079 at *8 (E.D. Pa. Oct. 11, 2001), citing Rogers v. Powell, 120 F.3d 446 (3d Cir. 1997) and Acierno v. Cloutier, 40 F.3d 597 (3d Cir. 1994); see also, Siegert v. Gilley, 500 U.S. 226, 233 (1991). One of the purposes of qualified immunity is to protect public officials from disruptive, "broad-ranging" discovery. Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987).

In the context of determining whether qualified immunity applies, the Court must first consider the threshold question of whether Plaintiff Ringgold has demonstrated the violation of an actual constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). The constitutional issue in the present matter is whether Defendants Curley and Vega used an unreasonable amount of force to stop Plaintiff's flight in violation of the Fourth Amendment. The answer to this question must necessarily be "no" because under the totality of the circumstances, the amount of force assumed to have been used by the Defendants was reasonable. Further, Plaintiff cannot adduce evidence proving that Defendant Vega was personally involved in his "seizure."

### 1.    Defendants' Alleged Use of Force Was Objectively Reasonable.

Where a plaintiff's excessive force claim arises in the context of an investigatory stop, arrest or other "seizure," the Court must construe plaintiff's complaint as "one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons... against

15

unreasonable... seizures' of the person." <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989). The complaint must then be analyzed under the "reasonableness" standard of the Fourth Amendment. <u>Id.</u> at 395.

In order to prevail on an excessive force claim where an individual alleges a violation of the Fourth Amendment, it must be demonstrated that the police officer's use of force was not "objectively reasonable." <u>Id.</u> at 397. The specific inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." <u>Id.</u> at 457. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." <u>Id.</u>, citing <u>Scott v. United States</u>, 436 U.S. 128, 138 (1978) and <u>United States v. Robinson</u>, 414 U.S. 218 (1973).

The reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Id.</u>, citing <u>Terry v. Ohio</u>, 392 U.S. 1, 20-22 (1968). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. <u>Id.</u>, citing <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (1973). Certainly with the benefit of hindsight one could opine that the police officer should have been able to arrest an individual in a less forceful manner. However, in an excessive force claim, the calculus of reasonableness is not hindsight, but rather "reasonableness at the moment," and it "must embody allowance for the fact that police officers are often forced to make split second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." <u>Id.</u> at 396-397; see also, <u>Beckwith v. Sherwood</u>, 2001 U.S. Dist. LEXIS 24079, at *14 (E.D. Pa. October 11, 2001).

The question of whether the force used to effect an arrest requires the Court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against "the countervailing governmental interests at stake." Id. at 396. The Courts have long recognized that the right to make an arrest or investigatory stop carries with it the right to use some degree of physical force, or the threat thereof, to effect it. Id. "The degree of force is dictated by the suspect's behavior." Clark v. Condon, 2002 U.S. Dist. LEXIS 17831, *7 (September 20, 2002). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," but rather requires the Court to analyze the facts and circumstances of each particular case. Graham, 490 U.S. at 396, quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979). To that end, the Court must consider several factors in making its determination, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight... as well as the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003) (internal citations omitted). The test then is whether the totality of the circumstances justified the particular force used. Tennessee v. Garner, 471 U.S. 1, 8-9 (1985).

Even if the Court assumes, for purposes of summary judgment, that Defendants "rammed" Plaintiff in order to stop Plaintiff's flight, the record evidence demonstrates that the force utilized by Defendants was not excessive, and that Plaintiff suffered no injuries as a result of being "rammed" by Defendants' vehicle. Under the totality of the circumstances, Defendants' actions were

17

objectively reasonable given the situation they faced. Plaintiff was a fugitive wanted for various weapons violations and was considered armed. Plaintiff fled the police in the 800 block of Morrow Street and continued to evade arrest by flight. During the vehicle pursuit, Plaintiff disregarded four (4) red lights, drove his vehicle into on-coming traffic, and exceeded the speed limit. Officer Moody transmitted over the radio during the pursuit that Plaintiff had discarded a firearm. Additionally, Plaintiff almost struck another police vehicle driven by Officers Draper and Lenhardt. (A 4-5, 7, 8). Further, the pictures taken of the two vehicles after Plaintiff was taken into custody show that the damage to the vehicles was minor, consisting mostly of paint transfer between the two vehicles. This evidences that the force assumed to be used by Defendants was *de minimis*. Lastly, Plaintiff suffered no injuries as a result of the alleged "ramming." (A 21-29) See, <u>Metcalf v. Long</u>, 615 F. Supp. 1108, 1121 (D. Del. 1985)(held that in an excessive force case brought under the Fourteenth Amendment there is no constitutional violation where the injury is minor; mere assault and battery does not rise to the level of a constitutional violation); <u>Bensinger v. Mullen</u>, 2000 U.S. Dist. LEXIS 11012, *5 (E.D. Pa. August 4, 2000), citing <u>Ingraham v. Wright</u>, 430 U.S. 651, 674 (1977); <u>Nardini</u>, 2001 U.S. Dist. LEXIS 15896 (E.D. Pa. September 19, 2001) (granting summary judgment where minimal amount of force was used); <u>Beckwith v. Sherwood</u>, 2001 U.S. Dist. LEXIS 24079, *12 (E.D. Pa. October 11, 2001)(granting summary judgment were the use of force was *de minimis*).

Given the severity of the crime, Plaintiff's refusal to stop, the potential threat to the officers' and civilian safety, and the possibility that Plaintiff was armed, the *de minimis* force allegedly utilized by Defendants was objectively reasonable. As such, Plaintiff cannot establish a violation of the Fourth Amendment, and Defendants are entitled to qualified immunity.

However, if the Court concludes that Plaintiff has demonstrated a violation of the Fourth

18

Amendment, the Court must next address the second part of the qualified immunity analysis, i.e., whether the constitutional right at issue was clearly established. <u>Saucier</u>, 533 U.S. at 202. This inquiry is essential and "must be undertaken in light of the specific context of the case, not as a broad general proposition... it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." <u>Id.</u> When a court denies summary judgment any time a material issue of fact remains on the excessive force claim, it undermines the goal of qualified immunity, specifically, "to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment... If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgement based on qualified immunity is appropriate." <u>Id.</u> at 282 (internal citations omitted). A right is "'clearly established' when the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987). Therefore, the relevant, dispositive inquiry in determining whether a right is "clearly established" is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 202.

Even if the Court finds that the amount of force was unreasonable, Defendants are entitled to qualified immunity if reasonable officers in their position could conclude that Defendants' actions were reasonable. "If on an objective basis 'it is obvious that no reasonably competent officer would have concluded that [the actions were lawful],' defendants are not immune from suit; however, 'if officers of reasonable competence could disagree on this issue, immunity should be recognized.'" <u>Sanders v. Workman</u>, 2001 U.S. Dist. LEXIS 9053, *10 (D. Del. March 26, 2001), citing <u>In re City of Philadelphia Litig.</u>, 49 F.3d 945, 961-962 (3d Cir. 1995). "An officer might correctly perceive

all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." Saucier, 533 U.S. at 202.

In the present matter, if it is assumed for purposes of summary judgment that the Defendants rammed Plaintiff's vehicle during the pursuit, Defendants are still entitled to qualified immunity because other officers would believe that the *de minimis* force used to stop Plaintiff was reasonable given the totality of the circumstance detailed above. As such, Defendants are entitled to qualified immunity.

> **2.    Plaintiff Cannot Maintain a §1983 Action Against Defendant Vega Because the Record Evidence Demonstrates that She was not Driving the Vehicle that Plaintiff Alleges Rammed Him.**

In order to prevail on a claim for damages for a constitutional violation pursuant to 42 U.S.C. §1983, Plaintiffs must establish that Defendant Vega acted under color of state law and caused or contributed to the alleged constitutional violation. West v. Atkins, 487 U.S. 42, 48 (1988). Specifically, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d cir. 1988). Stated differently, "a plaintiff must allege and prove a causal connection between the defendants and the alleged wrongdoing in order to recover." Id. at 1207. Such a causal connection is established by demonstrating that the defendants were personally involved in the alleged deprivation of his or her constitutional rights through allegations of either personal direction or actual knowledge and acquiescence. Id.; Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

In the present matter, there is no dispute that Defendant Vega was not driving the police

20

vehicle that Plaintiff alleges rammed into him.  Rather, she was a passenger in the vehicle.  (A9) Further, there is no evidence that Defendants Curley and Vega discussed and agreed to ram Plaintiff's vehicle in order to stop his flight.  Given these facts, Plaintiff cannot establish that Defendant Vega was personally involved in the alleged constitutional violation.  As such, Defendant Vega is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons set forth above, Defendants respectfully move this Honorable Court to grant their Motion for Summary Judgment and dismiss Plaintiff's Complaint.

    /s/ Rosamaria Tassone
Rosamaria Tassone, Esquire (I.D. #3546)
First Assistant City Solicitor
City of Wilmington Law Department
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801

22

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JAY RINGGOLD,                          :
                                       :
            Plaintiff,                  :
                                       :       C.A. No.  06-17 GMS
v.                                      :       TRIAL BY JURY DEMANDED
                                       :
OFFICER THOMAS CURLEY and              :
OFFICER NELIDA VEGA,                   :
                                       :
            Defendants.                 :

## CERTIFICATE OF SERVICE

I, Rosamaria Tassone, Esquire, hereby certify that on this 15th day of October, 2007, I

electronically filed Defendants' Opening Brief in Support of Their Motion for Summary with the

Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and that

these documents are available for viewing and downloading from CM/ECF, I also sent via U.S. Mail

one copy of said document to the following:

> Jay Ringgold
> (SBI #324847)
> Delaware Correctional Center
> 1181 Paddock Road
> Smyrna, DE 19977

  /s/ Rosamaria Tassone
Rosamaria Tassone, Esquire (I.D. #3546)
First Assistant City Solicitor
City of Wilmington Law Department
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801