IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JAY M. RINGGOLD, SR.,    )
           )
    Plaintiff,    )
           )
    v.    )    Civil Action No. 06-017-GMS
           )
OFFICER THOMAS CURLEY    )
and OFFICER NELIDA VEGA,    )
           )
    Defendants.    )

**MEMORANDUM**

## I. INTRODUCTION

The plaintiff, Jay M. Ringgold, Sr., ("Ringgold"), a prisoner incarcerated at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983. Ringgold appears *pro se* and was granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Ringgold alleges that the defendants used excessive force during a police chase on March 10, 2004.[1] Presently before the court are the parties' cross-motions for summary judgment and supporting memoranda. (D.I. 24, 27.) For the reasons that follow, the court will grant the defendants' motion for summary judgment and will deny Ringgold's motion for summary judgment.

## II. BACKGROUND

Ringgold alleges that at approximately 7:00 PM, on March 10, 2004, and during a police chase, his vehicle was rammed by the police cruiser of the defendants police officers Thomas

---

[1] The court dismissed the claims against the Wilmington Police Department, as well as the March 11, 2004 Jeep Cherokee negligence claims. (*See* D.I. 7.)

Curley ("Curley") and Nelida Vega ("Vega").[2] The record reflects that on March 10, 2004,
Wilmington police officers Tarik Moody ("Moody") and Chad Dougherty ("Dougherty")
attempted to serve a warrant upon Ringgold, a probation absconder, wanted for various weapons
offenses. (D.I. 25, A-4.) Ringgold was believed to be armed with a firearm. (*Id.*) Ringgold
admits that he "was on the run from a probation violation . . . .". (*Id.* at A-32.)

Moody and Dougherty approached a house where they believed Ringgold to be and saw a
man matching Ringgold's description sitting in the driver's seat of a 1995 Pontiac Grand Am
parked on the street. (*Id.* at A-4.) Moody and Dougherty pulled their marked police vehicle in
front of the Grand Am to prevent Ringgold from driving forward. As Moody and Dougherty
approached Ringgold on foot, Ringgold put his car into reverse and, while continuing to drive in
reverse, attempted to flee. (*Id.*) Moody returned to his police car and gave chase. (*Id.* at A-4.)
Police officers Gordon, Evans, and Buhrman joined in the pursuit. (*Id.* at A10-11).

As Ringgold drove, he exceeded the speed limit and ran four red stoplights. (*Id.* at A-4,
A-5.) At one point, he drove his car into the lanes of oncoming traffic. (*Id.* at A-5.) After he ran
the third stoplight, officers saw Ringgold throw a loaded handgun from his car. (*Id.* at A-5, A-
8.) Also, he sped past police officers Draper and Lenhardt and nearly struck their marked police
vehicle during his attempt to flee. (*Id.* at A-7 .) Ringgold continued to evade police officers and,
according to Moody, after he ran the fourth red traffic light, Ringgold rammed a marked police
vehicle. (*Id.* at A-5, A-9, A-19.) The car was driven by Curley. (*Id.* at A-9.) Vega was a
passenger in the car. (*Id.* at A-5, A-9.) Curley's police report states that the accident occurred
when Ringgold entered an intersection, attempted to pass a civilian vehicle on the left side, and

---

[2]Ringgold did not submit any evidence in support of his motion for summary judgment.

struck the front bumper of the police car.  (*Id.* at A-9.)  According to the sparse allegations in the complaint, Curley and Vega's car rammed the car driven by Ringgold. (D.I. 2.)  Curley and Vega were not injured. (D.I. 25, A-5.)  The front fender of their car was scraped and there was a paint transfer in the same area.  (*Id.*)

Curley pulled in behind Ringgold and followed him as continued to drive his car, but the impact caused damaged and Ringgold's car stopped running.  (*Id.* at A-5, A-9.)  Ringgold was removed from the car and arrested.  (*Id.*)  Ringgold  states that his "leg [was] slammed repeatedly into the door which resulted in [his] leg being bruised."  (*Id.* at A-32.)  Medical records indicate that Ringgold stated that "he was being pulled out of police cruiser while his leg was 'stuck in the door'," and that his leg was "shut in the door of a police cruiser."  (*Id.* at A-36.)  Ringgold was taken to the hospital for treatment for a contusion to the right leg and x-rayed.  (*Id.* at A-36-A-40.)  The x-rays were negative.  (*Id.*)  Ringgold was advised to take Ibuprofen and released.  (*Id.* at A-40.)

As a result of the events of March 10, 2004, Ringgold was charged with twenty-two (22) offenses.  (*Id.* at A-42.)  He pled guilty to possession of a deadly weapon, tampering with evidence, resisting arrest, and aggressive driving.  (*Id.* at A-42.)

## III.  DISCUSSION

### A.  Standard of Review

The court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of proving that no genuine

issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the

court must view the evidence in the light most favorable to the nonmoving party and draw all

reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

If the moving party has demonstrated an absence of material fact, the nonmoving party then

"must come forward with 'specific facts showing that there is a genuine issue for trial.'"

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587 (quoting Fed. R. Civ. P.

56(e)). The mere existence of some evidence in support of the nonmoving party, however, will

not be sufficient for denial of a motion for summary judgment; there must be enough evidence to

enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 249 (1986). Moreover, a party opposing summary judgment "must

present more than just 'bare assertions, conclusory allegations or suspicions' to show the

existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir.

2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the nonmoving party fails

to make a sufficient showing on an essential element of its case with respect to which it has the

burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.

v. Catrett*, 477 U.S. 317, 322 (1986).

The defendants move for summary judgment on the grounds that Ringgold cannot

establish a Fourth Amendment violation, they are entitled to qualified immunity, and Vega did

not have the requisite personal involvement to establish a § 1983 claim. Ringgold moves for

summary judgment on the basis that he did not receive certain documents during discovery, he

alleges an Eighth Amendment violation not a Fourth Amendment violation, the defendants rely

upon irrelevant information, qualified immunity is inapplicable, the defendants' use of force was wanton and reckless, and Vega's position that she had no personal involvement is a mere ploy to avoid testifying in court because she was in the car during the incident.

### B. Fourth Amendment

The defendants move for summary judgment on the claims Ringgold raises under the Fourth Amendment. Plaintiff insists that Eighth Amendment violations, not Fourth Amendment violations, occurred during the course of his arrest on March 10, 2004.

Excessive force claims arising out of an arrest are analyzed under the Fourth Amendment, *Graham v. Connor,* 490 U.S. 386 (1989), while excessive force claims for those convicted of a crime are analyzed under the Eighth Amendment, *Graham v. Connor,* 490 U.S. at 395 n.10. To the extent that Ringgold raises claims under the Eighth Amendment, they fail as a matter of law. Accordingly, the court will grant the defendants' motion for summary judgment, and will deny Ringgold's motion for summary judgment, on the claims raised under the Eighth Amendment.

### C. Use of Force

Even if Ringgold had raised a claim under the Fourth Amendment, he would not prevail. In dispute is whether Ringgold's vehicle rammed the defendants's vehicle or whether Curley rammed Ringgold's vehicle. Other relevant facts are not in dispute. As discussed below, even viewing the facts in the light most favorable to Ringgold, a reasonable jury could not find that the defendants violated the Fourth Amendment.

"[A] Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris,* –U.S.–, 127 S.Ct. 1769, 1776 (2007) (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989);

*Brower v. County of Inyo*, 489 U.S. at 597 ("If . . . the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure." "[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397; *Mosley v. Wilson*, 102 F.3d 85, 95 (3d Cir. 1996). A court must judge the reasonableness of particular force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The reasonableness of the officers' use of force is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Police are permitted to use a reasonable amount of force to effect an arrest; the degree of force is dictated by the suspect's behavior. *Id.*

Ringgold does not dispute that he was in flight. Nor does he dispute that prior to the time the two vehicles collided he was speeding, ran four red lights, threw a gun from his car, and by all accounts, was driving in a reckless manner. For example he drove in reverse, almost struck a police vehicle, entered an intersection almost striking a civilian vehicle, and continued to drive even though his vehicle was damaged by the impact.

It is evident in reviewing the record that Ringgold's actions posed an actual and imminent threat to the lives of any pedestrians, civilian motorists, and police officers involved in the chase. Indeed, the record reflects that Ringgold almost collided with a civilian motorist and almost collided with a police vehicle other than the one driven by Curley. Yet, Ringgold continued to flee. If in fact, Curley did intentionally ram Ringgold's vehicle, his actions were objectively reasonable given the fact that others may have been harmed had Ringgold not been stopped. A reasonable jury could conclude that the force used was reasonable given the conduct of Ringgold. Accordingly, the court finds that any force that may have been applied does not rise to the level of a constitutional violation. *See Scott v. Harris*, 127 S.Ct. 1769, 1779 (2007) ("A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death."). For the above reasons, the court will grant the defendants' motion for summary judgment and will deny Ringgold's motion for summary judgment.[3]

## VI. CONCLUSION

For the above stated reasons the court will grant the defendants' motion for summary judgment and will deny the plaintiff's motion for summary judgment. An appropriate order will be entered.

Jan 30, 2009
Wilmington, Delaware

CHIEF, UNITED STATES DISTRICT JUDGE

---

[3]The court sees no need to address the issues of qualified immunity and the personal involvement of Vega since Ringgold's constitutional rights were not violated.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JAY M. RINGGOLD, SR.,                )
                                     )
        Plaintiff,                   )
                                     )
            v.                       )        Civil Action No. 06-017-GMS
                                     )
OFFICER THOMAS CURLEY                )
and OFFICER NELIDA VEGA,             )
                                     )
        Defendants.                  )

**ORDER**

At Wilmington this 30th day of _____ Jan. _____, 2009, for the reasons set forth in

the Memorandum issued this date;

1. The defendants' motion for summary judgment is **granted**.  (D.I. 24.)

2. The plaintiff's motion for summary judgment is **denied**.  (D.I. 27.)

3. The clerk of the court is directed to enter judgment in favor of the defendants and

against the plaintiff.

_____
CHIEF, UNITED STATES DISTRICT JUDGE